<u>NOT FOR PUBLICATION</u>

**[18]**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
:
NELSON VALDEZ, :
:
    Plaintiff, : Civil Action No. 06-cv-03714 (FLW) (JJH)
:
v. :
:
WARREN COUNTY CORRECTIONAL :
DEPARTMENT <u>et</u> <u>al</u>., : OPINION
:
    Defendants. :
:
_____ :

**<u>WOLFSON, United States District Judge</u>**

    Presently before the Court is the Motion of Defendants, Warren County and Unnamed Sheriff's Officers for Summary Judgment to dismiss the Complaint of Plaintiff, Nelson Valdez, a prisoner at Warren County Adult Correctional Center ("WCACC"). Plaintiff alleges that, following a fall outside of the Warren County Courthouse, he received inadequate medical care in violation of his Constitutional rights under the Eighth Amendment. Despite receiving multiple doctor consultations, a surgical evaluation, and numerous prescriptions for Motrin and Tylenol, Plaintiff alleges that he was "barely taken care of" and "made to wait a long time" for medical care. The Court has considered the moving papers, there being no opposition thereto, and for the reasons that follow, Defendants' motion for Summary Judgment is granted.

I.      BACKGROUND

On August 7, 2006, Plaintiff filed a pro se Complaint in the United States District Court of New Jersey alleging, inter alia, violations of his Constitutional rights under the Eighth Amendment pursuant to 42 U.S.C. § 1983.[1] (Pl.'s Mot. Summ. J., Ex. A). The Complaint and Plaintiff's application to proceed in forma pauperis were reviewed by this Court, which issued an opinion dated January 9, 2007: (1) granting Plaintiff's application to proceed in forma pauperis; (2) permitting plaintiff's Eighth Amendment medical care claim to proceed; and (3) dismissing all other claims with prejudice for failure to state a claim. (Pl.'s Mot. Summ. J., Ex. B).

In applying the standard for determining the sufficiency of a pro se complaint, the Court liberally construed Plaintiff's claims. The Court allowed Plaintiff to proceed with his Eighth Amendment claim provided he amended the Complaint within 30 days to cure various deficiencies. In his complaint Plaintiff incorrectly named the Warren County Correctional Department instead of the Warren County Adult Correctional Center and Warren County, failed

---

[1] The Eighth Amendment is applicable to the states through § 1983. See West v. Atkins, 487 U.S. 42, 48 (1988). Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. To state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. West, 487 U.S. at 48; Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994). "[D]eliberate indifference to serious medical needs of prisoners [is] proscribed by the Eighth Amendment. . . . Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." Estelle v. Gamble, 429 U.S. 97, 104-05 (1976).

to name any individuals as the Unnamed Sheriff's Officers, and failed to name any of the WCACC doctors in connection with his alleged inadequate medical care. Plaintiff never filed an amended Complaint with this Court. Defendants provided documents to the Plaintiff in compliance with Federal Rule of Civil Procedure 26 on March 23, 2007. Plaintiff answered interrogatories, however never produced his Fed. R. Civ. P. 26 disclosures. Defendants now move for summary judgment.

On January 13, 2006, Plaintiff, then an inmate in the custody of the WCACC, fell outside the Warren County Courthouse while walking back to the van after a court appearance. (Pl.'s Mot. Summ. J., Ex. C). He was taken to the medical unit at WCACC by Officer Bevins, and treated by a nurse for small abrasions or "brush burns" on his left cheek, left knee, and right middle finger. (Pl.'s Mot. Summ. J., Ex. C). These abrasions were so minor that the nurse's treatment of them was not noted in Plaintiff's chart.

On January 15, 2006, Plaintiff submitted a medical request form stating that he fell down the other day at the courthouse and had pain in his neck, rib, and cheek closest to his left eye. (Pl.'s Mot. Summ. J., Ex. D). In response to this information, Dr. Shah prescribed Motrin and Tylenol to Plaintiff for five days. (Pl.'s Mot. Summ. J., Ex. E).

Three days later, on January 18, 2006, Plaintiff requested to see the doctor "to check something under his stomach that happened when [he] fell down at the courthouse and [was] really bothering [him]." (Pl.'s Mot. Summ. J., Ex. F). Plaintiff was placed on the doctor's list January 19, 2006, (Pl.'s Mot. Summ. J., Ex. F), and was seen by the doctor the next day. The doctor diagnosed a right inguinal hernia, (Pl.'s Mot. Summ. J., Ex. G), and ordered that medical restrictions be placed on Plaintiff, specifically that he be assigned a lower bunk, no gym/weight

lifting, and that he be scheduled for a surgical evaluation. (Pl.'s Mot. Summ. J., Ex. H).

On February 6, 2006, Plaintiff again requested to be put on the list to see the doctor. His medical request form states that the lump he had under his abdomen had gotten bigger since the day he fell down and was starting to cause him pain. (Pl.'s Mot. Summ. J., Ex. I). On February 7, 2006, he was put on the list to see the doctor. (Pl.'s Mot. Summ. J., Ex. I). Then, February 18, 2006, Plaintiff submitted another request to see a doctor complaining of pain from the lump in his lower abdomen. (Pl.'s Mot. Summ. J., Ex. J). He was seen by Dr. Shah on February 22, 2006. (Pl.'s Mot. Summ. J., Ex. J). Dr. Shah prescribed Tylenol to Plaintiff for one month, and continued the medical restrictions. (Pl.'s Mot. Summ. J., Ex. K). Beginning March 2, 2006, Plaintiff began to occasionally refuse Tylenol. The records demonstrate that he refused Tylenol on March 2nd, March 4th, March 16th, and March 20th. (Pl.'s Mot. Summ. J., Ex. L).

On March 27, 2006, Plaintiff requested that the doctor lift the restrictions on his exercise and work. He stated that the lump did not stop him from "doing his personal thing[s]," and asked that they contact him about it. (Pl.'s Mot. Summ. J., Ex. M). He repeated this request the next day on March 28, 2006, stating that he "feels good," the lump and pain had disappeared, and that he wants to go back to his exercise routine and get a job in the prison. (Pl.'s Mot. Summ. J., Ex. N). The following day, on March 29, 2006, Plaintiff filed another request to see a doctor, stating that he wanted to get a check up and either have the restrictions lifted, or be sent to a special doctor. (Pl.'s Mot. Summ. J., Ex. O). On the same day, he filed a grievance with the Warden complaining that the doctor put restrictions on him three months ago and that he is now in good condition to work and exercise. He also stated that the doctor told him he needed surgery, but that he had not yet received x-rays. (Pl.'s Mot. Summ. J., Ex. P).

On March 30, 2006, Patty Daugherty, Health Services Administrator, prepared a response to Plaintiff's grievance. She told him that she was in the process of arranging a surgical consult for him, and that she had only recently became aware of his medical condition.[2] She also indicated that it was necessary for the restrictions to remain in place until Plaintiff was seen by the surgeon. (Pl.'s Mot. Summ. J., Ex. M, P).

On April 19, 2006, Plaintiff was seen by Dr. Kohli, a surgeon. Dr. Kohli ordered that the medical restrictions remain in effect. (Pl.'s Mot. Summ. J., Ex. O, Q). Nevertheless, on April 20, 2006, Plaintiff filed a request to lift an office unit restriction stating that he had seen the surgeon the day before and that his recreation restriction was already lifted. (Pl.'s Mot. Summ. J., Ex. R). Plaintiff asked that his restrictions be lifted and stated in a progress note dated April 21, 2006 that the surgeon told him he didn't need any restrictions. The progress note indicates that the doctor discussed this with Plaintiff, and agreed to discontinue restrictions, but told him to still avoid heavy lifting. (Pl.'s Mot. Summ. J., Ex. S). On April 21, 2006, after Plaintiff's repeated requests, the medical restrictions on his activities were lifted, (Pl.'s Mot. Summ. J., Ex. T), and Plaintiff received medical clearance to work as a food handler. (Pl.'s Mot. Summ. J., Ex. U). Plaintiff's answers to interrogatories indicate that the surgeon recommended surgery and that the Plaintiff actually received surgery for his right inguinal hernia. (Pl.'s Answer Interrogs.)

## II. STANDARD OF REVIEW

A party seeking summary judgment must "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Kreschollek v. S. Stevedoring Co.,

---

[2] Daugherty began her employment with WCACC on March 15, 2006.

223 F.3d 202, 204 (3d Cir. 2000).  In deciding whether summary judgment should be granted, the Court considers "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits," Fed. R. Civ. P. 56(c), and construes all facts and inferences in the light most favorable to the nonmoving party.  Curley v. Klem, 298 F.3d 271, 276-77 (3d Cir. 2002).  The Court's function "at the summary judgment stage . . . is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  To successfully defend against a motion for summary judgment, a plaintiff cannot merely rely on the unsupported allegations of the complaint, and must present more than the "mere existence of a scintilla of evidence" in his favor.  Id. at 252.

If the non-movant fails to oppose the motion for summary judgment, Rule 56(e) provides that the Court may only grant the motion for summary judgment "if appropriate." See, e.g., U Anchorage Assocs. v. V.I. Bd. of Tax Rev., 922 F.2d 168, 175 (3d Cir.1990); see also Damino v. Sony Music Entm't, 975 F. Supp. 623, 627 (D.N.J. 1996) (granting summary judgment motion because plaintiff's argument was unopposed, and thus no genuine issue of material fact was created). The motion is appropriately granted when that party is entitled to judgment as a matter of law. Anchorage Assocs., 922 F.2d at 175. When "the non-moving party fails to oppose the motion for summary judgment by written objection, memorandum, affidavits and other evidence, the Court will accept as true all material facts set forth by the moving party with appropriate record support." Carp v. Internal Revenue Serv., 2002 WL 373448, at *2 (D.N.J. Jan. 28, 2002) (quoting Anchorage Assocs., 922 F.2d at 175). Even if a record contains facts that might provide support for a non-movant's position, "the burden is on the [non-movant], not the court, to cull the

record and affirmatively identify genuine, material factual issues sufficient to defeat a motion for summary judgment." Morris v. Orman, No. 87-5149, 1989 WL 17549, at *8 (E.D. Pa. Mar. 1, 1989) (citing Childers v. Joseph, 842 F.2d 689 (3d Cir.1988)); see also Atkinson v. City of Phila., 2000 WL 793193, at *5 n. 8 (E.D. Pa. June 20, 2000).

### III.   DISCUSSION

#### A.   EIGHTH AMENDMENT RIGHTS: MEDICAL CARE

Plaintiff has a protected right in being incarcerated at a place of confinement conforming to the standards set forth by the Eighth Amendment. The Constitution "does not mandate comfortable prisons," Rhodes v. Chapman, 452 U.S. 337, 349 (1981), but neither does it permit inhumane ones, and it is now settled that "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." Helling v. McKinney, 509 U.S. 25, 31 (1993). In its prohibition of "cruel and unusual punishments, the Eighth Amendment . . . imposes duties on [prison] officials, who must provide humane conditions of confinement; prison officials . . . must take reasonable measures to guarantee the safety of the inmates." Hudson v. Palmer, 468 U.S. 517, 526-27 (1984), see Helling, 509 U.S. at 31-32; Washington v. Harper, 494 U.S. 210, 225 (1990); Estelle v. Gamble, 429 U.S. 97, 103 (1976).

The Eighth Amendment prohibits conditions which involve the unnecessary and wanton infliction of pain or are grossly disproportionate to the severity of the crime warranting imprisonment. Rhodes, 452 U.S. at 346, 347. The cruel and unusual punishment standard is not static, but is measured by "the evolving standards of decency that mark the progress of a maturing society." Rhodes, 452 U.S. at 346 (quoting Trop v. Dulles, 356 U.S. 86, 101 (1958)).

The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. Estelle v. Gamble, 429 U.S. 97, 103-04 (1976).  In order to set forth a cognizable claim for a violation of his right to adequate medical care, an inmate must allege:  (1) a serious medical need; and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need.  Id. at 106; Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).

**1.      Serious Medical Need**

To satisfy the first prong of the Estelle inquiry, the inmate must demonstrate that his medical needs are serious. "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" Hudson v. McMillian, 503 U.S. 1, 9 (1992).  Persistent severe pain qualifies as a serious medical need.  Serious medical needs include those that have been diagnosed by a physician as requiring treatment or that are so obvious that a lay person would recognize the necessity for doctor's attention, and those conditions which, if untreated, would result in lifelong handicap or permanent loss.  Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987), cert. denied, 486 U.S. 1006 (1988).

**a.      Claims Related to Abrasions**

Plaintiff cannot establish that he had a serious medical need in regard to the abrasions he suffered when he fell down outside the Warren County Courthouse.  These abrasions were described as  "brush burns" on his left cheek, left knee, and right middle finger.  On the day of the fall Plaintiff was taken to the medical unit where he was treated by a nurse for his abrasions.

He filled out a medical request two days later complaining of pain in his neck, rib and left cheek. Motrin and Tylenol were ordered for him the same day. However, this was the last time Plaintiff makes any type of complaint related to his face or cheek. In Plaintiff's answers to interrogatories, he claims that his injuries included a "fracture [sic] forehead and the cheek bone, and the left knee," and reports a "severe [sic] scared forehead . . . and a cheek bone that is not right in place and perhaps could possibly be chipped." But, there is no evidence that Plaintiff suffered anything beyond minor abrasions that were treated the day of the incident and nothing on the record indicates that Plaintiff's abrasions would result in lifelong handicap or permanent loss. Therefore Plaintiff cannot establish a "serious medical need" with regard to the abrasions he sustained from his fall.

        b.        **Claims Related to Right Inguinal Hernia**

Plaintiff can however, demonstrate that he had a serious medical need with regard to the right inguinal hernia, because the injury was obvious to a lay person. On January 18, 2006 Plaintiff complained for the first time of pain and a lump under his stomach that was bothering him since his fall outside the courthouse on January 13, 2006. Plaintiff himself recognized the need for medical attention when the lump under his stomach began to get larger and the pain became more pronounced. Plaintiff was diagnosed with a right inguinal hernia on January 20, 2006. The doctor ordered that medical restrictions be placed on Plaintiff, including restriction to the lower bunk, no gym/weight lifting, and he was prescribed a regimen of Tylenol and Motrin for pain. Plaintiff was also scheduled for a surgical evaluation. On February 6, 2006, Plaintiff complained that the lump under his stomach was getting larger and more painful; then Plaintiff had his surgical evaluation and the surgeon ordered the medical restrictions to stay in effect. The

necessity for a doctor's attention was apparent when the injury got worse over time, subsequently affecting the Plaintiff's ability to conduct regular activities. An untreated hernia which prevents daily exercise and routine activities constitutes a handicap to the person suffering from it. Therefore, granting all inferences for Plaintiff in this record, I find that Plaintiff has established a "serious medical need" with regard to his right inguinal hernia.

**2.      Deliberate Indifference**

The second element of the Estelle test requires an inmate to show that prison officials acted with deliberate indifference towards his serious medical need. "Deliberate indifference" exists "where [a] prison official: (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." Rouse, 182 F.3d at 197. "Deliberate indifference" is more than mere malpractice or negligence; it is a state of mind equivalent to reckless disregard of a known risk of harm. Farmer v. Brennan, 511 U.S. 825, 837-38 (1994). Furthermore, deliberately delaying a necessary medical diagnosis for a long period of time in order to avoid providing care constitutes deliberate indifference that is actionable. See Durmer v. O'Carroll, 991 F.2d 64 (3d Cir. 1993).

However, a prisoner's subjective dissatisfaction with his medical care does not in itself indicate deliberate indifference. Andrews v. Camden County, 95 F.Supp.2d 217, 228 (D.N.J. 2000); Peterson v. Davis, 551 F. Supp. 137, 145 (D. Md. 1982), aff'd, 729 F.2d 1453 (4th Cir. 1984). Similarly, "mere disagreements over medical judgment do not state Eighth Amendment claims." White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990). "Courts will disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment . . . [which]

remains a question of sound professional judgment. Implicit in this deference to prison medical authorities is the assumption that such informed judgment has, in fact, been made." Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) (internal quotation and citation omitted).  Even if a doctor's judgment concerning the proper course of a prisoner's treatment ultimately is shown to be mistaken, at most what would be proved is medical malpractice and not an Eighth Amendment violation.  Estelle, 429 U.S. at 105-06; White, 897 F.2d at 110.

> Furthermore, the United States Court of Appeals for the Third Circuit has held that:
>
> [w]here prison authorities deny reasonable requests for medical treatment, however, and such denial exposes the inmate "to undue suffering or the threat of tangible residual injury," deliberate indifference is manifest.  Similarly, where "knowledge of the need for medical care [is accompanied by the] . . . intentional refusal to provide that care," the deliberate indifference standard has been met. . . . Finally, deliberate indifference is demonstrated "[w]hen . . . prison authorities prevent an inmate from receiving recommended treatment for serious medical needs or deny access to a physician capable of evaluating the need for such treatment."

Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d at 346 (citations omitted).  Short of absolute denial, "if necessary medical treatment [i]s . . . delayed for non-medical reasons, a case of deliberate indifference has been made out."  Id. (citations omitted).  Deliberate indifference is also evident where prison officials erect arbitrary and burdensome procedures that "result[] in interminable delays and outright denials of medical care to suffering inmates."  Id. at 347 (citation omitted).

Even though this Court concludes in this Motion that Plaintiff's right inguinal hernia is sufficiently serious to constitute a serious medical need, there is insufficient evidence to support the conclusion that Defendants acted with deliberate indifference towards Plaintiff.  When the

-11-

non-moving party fails to oppose a motion for summary judgment, the Court accepts as true all material facts set forth by the moving party in affidavits and other evidence. Carp v. Internal Revenue Serv., 2002 WL 373448, at *2 (D.N.J. Jan. 28, 2002). Even if the record contains facts that might provide support for a non-movant's position, "the burden is on the [non-movant], not the court, to identify genuine, material factual issues." Morris v. Orman, No. 87-5149, 1989 WL 17549, at *8 (E.D.Pa. Mar. 1, 1989) (citing Childers v. Joseph, 842 F.2d 689 (3d Cir. 1988)); see also Atkinson v. City of Phila., 2000 WL 793193, at *5 n. 8 (E.D. Pa. June 20, 2000).

The medical records of Plaintiff attached to Defendants' Motion for Summary Judgment demonstrate that Plaintiff's medical needs were met in a timely and appropriate manner. Plaintiff received prompt medical attention on multiple occasions to treat the injuries caused by his fall. Plaintiff alleges that the three months between his first complaint of stomach pains and a surgical visit constituted deliberate indifference.[3] However, when Plaintiff first complained of the pain under his stomach, a doctor saw him and put the appropriate restrictions in place to protect against exacerbation of his condition. Plaintiff also received a surgical evaluation of his condition on April 19, 2006. Plaintiff's answers to interrogatories indicate that the surgeon recommended surgery and that the Plaintiff actually received surgery for his right inguinal hernia. Plaintiff's disagreement with his doctor's diagnosis, prescriptions and restrictions on certain

---

[3]   Plaintiff also alleges in his response to interrogatories that the failure of the WCACC to provide post-surgery rehabilitation constitutes an Eighth Amendment violation. In Durmer, the Third Circuit held that a prisoner who subsequent to incarceration was prevented from continuing the physical therapy prescribed by his doctor for six months, constituted deliberate indifference. See Durmer v. O'Carroll, 991 F.2d 64 (3d Cir. 1993). However, unlike the prisoner in Durmer, Plaintiff merely states that he never received rehabilitation. No evidence has been provided to show that Plaintiff needed post-surgery rehabilitation, that it was refused to him, or that it was even prescribed to him by a doctor.

activities is not sufficient to establish deliberate indifference.[4]  See  White, 897 F.2d at 110; Inmates of Allegheny County Jail, 612 F.2d at 762.  Defendants did not refuse to treat Plaintiff or prevent him from receiving any medical treatment or from being evaluated by a physician.  The evidence set forth by Plaintiff fails as a matter of law to identify any material issues of fact that could show deliberate indifference on the part of the WCACC.  Since a reasonable juror could not find that Plaintiff was denied medical care with deliberate indifference, Defendants' motion for summary judgment is granted.

**IV.    CONCLUSION**

For the reasons set forth above, Defendants' Motion for Summary Judgment is granted and Plaintiff's Complaint is dismissed.  An appropriate order will follow.


Dated:          November 2nd, 2007


                                        s/ Freda L. Wolfson
                                        The Honorable Freda L. Wolfson
                                        United States District Judge

---

[4]     At most Plaintiff disagrees with the course of his treatment, but even if a doctor's judgment concerning the proper course of a prisoner's treatment is ultimately shown to be mistaken, it is not necessarily an Eighth Amendment violation.  Estelle, 429 U.S. at 105-06; White, 897 F.2d at 110.  Furthermore, the restrictions placed on the Plaintiff were at least partially successful as demonstrated by Plaintiff's March 27, 2006 request to remove restrictions on work and exercise.